UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| IDAHO TIMBER OF CARTHAGE, LLC | CIVIL ACTION NO. 09-1265 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TRISTATE LAND AND MINERALS, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss (Record Document 8) filed by defendants Tristate Land and Minerals, LLC ("Tristate Land"), Tri-State Company, LLC ("Tri-State"), and A. Lamar Smith ("Smith"). The motion is opposed by plaintiff Idaho Timber of Carthage, LLC ("ITC"). See Record Documents 12 and 17. For the reasons which follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND[1]**

On May 22, 2002, Tristate Land, Tri-State, and ITC entered into a Timber Deed. See Record Document 1, Exhibit P-1. Section One of the Timber Deed provides:

SECTION ONE
SALE AND OPTION

[Tristate Land and Tri-State] shall sell to ITC and ITC shall purchase from [Tristate Land and Tri-State] all of the pine timber and pine trees measuring 15" DBH or larger in diameter, on the terms and conditions set forth herein, now standing and growing on the property located in Columbia County and Lafayette Counties, Arkansas, and Webster Parish, Louisiana, . . . ("Property").

In addition, [Tristate Land and Tri-State] grants to ITC the exclusive option to purchase from [Tristate Land and Tri-State], at ITC's sole discretion, all the pine timber and pine trees measuring 15" DBH or smaller in diameter, on

---

[1]The factual background is drawn from the Complaint in Suit for Breach of Contract (Record Document 1) and the May 22, 2002 Timber Deed, which was attached to ITC's complaint as Exhibit P-1 when originally filed.

terms and conditions set forth herein, now standing or growing on the Property.

Id., Exhibit P-1 at § 1.  Under the Timber Deed, ITC was to pay Tristate Land and Tri-State (sometimes hereinafter referred to as "the Tristate defendants") $365.00 per thousand board feet for pine logs purchased by ITC.  See id., Exhibit P-1 at § 2.  The Timber Deed required ITC to make three monetary advances of $1,095,000 in the years 2002, 2003, and 2004, each sufficient to cover the contract price for 2,000,000 board feet of timber.  See id., Exhibit P-1 at § 3.  ITC made payments on May 24, 2002 and January 9, 2003, totaling $2,190,000.  See id. at ¶ 8.  Section Three of the Timber Deed further provided:

> Before January 1, 2004, if ITC is not satisfied that there is at least 2,000,000 board feet of pine logs remaining, then ITC (in its sole discretion) shall determine the remaining volume that is in accordance with the specifications as set forth herein.  The 2004 advance shall be made in accordance with this agreement on a proportionate basis of remaining pine saw logs.
>
> Notwithstanding the foregoing, if on January 1, 2004, ITC has not purchased a total of 6,000,000 board feet of pine logs, or more, during the preceding term of this agreement then this agreement shall, at the option of ITC, either: (I) continue until such time as ITC has purchased a total of 6,000,000 board feet in compliance with the terms and conditions of this agreement, or (ii) terminate, upon written notice from ITC to [Tristate Land and Tri-State], which notice shall be given on or before February 1, 2004.  If ITC terminates this agreement in compliance with this sub-paragraph, [Tristate Land and Tri-State] shall reimburse ITC for any and all unused portions of the money advanced to [Tristate Land and Tri-State] hereunder within thirty (30) days after receipt of said written notice from ITC.

Id., Exhibit P-1 at § 3.  The Timber Deed also provided ITC with a right of entry:

SECTION FOUR
RIGHT OF ENTRY

> [Tristate Land and Tri-State] has . . . bargained, sold and delivered unto ITC, subject to the terms and conditions herein stated, all pine saw logs as herein specified, together with full and free rights to enter upon said lands at any time before December 31, 2004, or such time as this agreement shall be extended or earlier terminated as provided for herein, and to cut and remove

>said timber and trees and such undergrowth as may impede the cutting, felling and removal thereof. [Tristate Land and Tri-State] shall provide necessary rights of way for access, and shall assist to make the access passable.

Id., Exhibit P-1 at § 4. The enforcement and interpretation of the Timber Deed is to be governed by the laws of the state of Arkansas. See id., Exhibit P-1 at § 12.

In its complaint, ITC alleges breach of contract against the Tristate defendants. Specifically, ITC alleges that the Tristate defendants "have not logged and delivered the balance of the pine timber purchased by [ITC] or reimbursed the credit balance to [ITC] despite written demand." Id. at ¶ 16. ITC seeks reimbursement of its credit balance of $532,237.16. See id. at ¶ 15. As to Smith, ITC alleges that he cut, logged, and delivered pine logs belonging to ITC under the Timber Deed and then sold such pine logs to a third party, keeping the cash or payments received for himself. See id. at ¶ 17. Thus, ITC alleges that Smith "converted pine logs and proceeds from the sale thereof which had been previously sold by Tristate to ITC to his personal account, all contrary to the terms and conditions of the Timber Deed and law." Id.

Defendants have now filed a Motion to Dismiss. See Record Document 8. The Tristate defendants seek dismissal on the ground that ITC cannot allege any delivery obligation under the Timber Deed or any right to reimbursement, as its rights are limited to continuing the Timber Deed until 6,000,000 board feet of timber have been cut and credited at the agreed price. See id. Smith moves for dismissal on the ground that ITC cannot state a claim against him for breach of contract because no contract existed between ITC and Smith. See id. Additionally, Smith argues that ITC has not adequately plead the application of Arkansas law for its conversion claim against Smith individually

and that such claim, even if adequately plead under Arkansas law, is subject to the Louisiana limitations period and is time-barred. See Record Document 18.

## LAW AND ANALYSIS

**I.  Rule 12(b)(6) Standard.**

In deciding a Rule 12(b)(6) motion to dismiss, the district court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Notwithstanding, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." Id., citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. Yet, if the allegations set forth in the complaint, even if true, could not raise a claim of entitlement to relief, the court will expose the basic deficiency "at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007).

**II.  Breach of Contract Claim Against the Tristate Defendants.**

ITC has attached substantial documentation to its opposition, including an affidavit from one of its employees. In deciding a Rule 12(b)(6) motion, courts may rely on the complaint, its proper attachments, and matters of public record. See Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006). Here, the complaint and the Timber Deed, which was attached to the complaint, are properly before the Court as part of the Rule 12(b)(6) record. Accordingly, ITC's exhibits, and any arguments predicated

upon those exhibits, will not be considered in deciding the pending motion.[2]

ITC alleged that the Tristate "[d]efendants have not logged and delivered the balance of the pine timber purchased by [ITC] or reimbursed the credit balance [of $532,237.16] to [ITC] despite written demand." Record Document 1 at ¶ 16. The Tristate defendants move for dismissal on the grounds that there was no delivery obligation under the Timber Deed and that ITC has no right to reimbursement. See Record Document 8-3 at 3-6.

A review of the Timber Deed reveals no delivery obligation on the part of the Tristate defendants. Section Four of the Timber Deed grants ITC "full and free rights to enter upon said lands . . . to cut and remove said timber and trees" and further provides that the Tristate Defendants "shall provide necessary rights of way for access." Record Document 1, Exhibit P-1 at § 4. Section Six states that "ITC shall use good forestry practices and reasonable care in the removal of the timber conveyed herein." Id., Exhibit P-1 at § 6. Section Seven further provides that ITC is "responsible for any and all claims from third parties for damages caused by [ITC's] operating in the cutting and removing of the timber conveyed herein." Id., Exhibit P-1 at § 7. These provisions in no way obligate the Tristate defendants to "log and deliver" pine timber under the Timber Deed.

ITC's argument that the Timber Deed is ambiguous on the issue of logging and

---

[2]Moreover, ITC has invoked Arkansas substantive law based upon Section Twelve of the Timber Deed. Under Arkansas law, "[t]he parol evidence rule prohibits introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement." First Nat. Bank of Crossett v. Griffin, 832 S.W.2d 816, 818 (Ark. 1992). The parol evidence rule "is a substantive rule of law rather than a rule of evidence" and "[i]ts premise is that the written agreement itself is the best evidence of the intention of the parties." Id. at 818-819.

delivery is also unconvincing. ITC relies on Sections Nine and Thirteen to support this contention. ITC points to Section Nine's reference to removal by a third party[3] and Section Thirteen's reference to "harvesting by other parties."[4] However, the plain language of these sections simply does not support a overarching delivery obligation on the part of the Tristate Defendants. For instance, Section Thirteen's reference to "harvesting by other parties" relates to logging incidental to the harvesting of hardwood pulpwood or hardwood logs. Nothing in Sections Nine and Thirteen imposes an affirmative duty upon the Tristate defendants to "log and deliver."

ITC's reimbursement claim also fails under the plain language of Section Three of the Timber Deed. Section Three provides:

> Notwithstanding the foregoing, if on January 1, 2004, ITC has not purchased a total of 6,000,000 board feet of pine logs, or more, during the preceding

---

[3]Section Nine provides:

Title to timber removed pursuant to this agreement shall pass to ITC at the time of scaling by ITC. Risk of loss to said timber subject to removal and an insurable interest in such timber shall pass to ITC at the time of felling by ITC, or if removed by [Tristate Land and Tri-State] or a third party, then at the time of scaling by ITC.

Record Document 1, Exhibit P-1 at § 9.

[4]Section Thirteen states in pertinent part:

[Tristate Land and Tri-State] agrees that it will have cut and delivered all pine saw logs as it, or any third parties through it, cuts incidental to, or in any way related to, the harvesting of hardwood pulpwood or hardwood logs on the properly during the term of this agreement. ITC agrees that it will cut and deliver all hardwood pulpwood and hardwood logs it cuts incidental to, or in any way related to, the cutting of its pine logs on the property during the term of this agreement.

Record Document 1, Exhibit P-1 at § 13.

> term of this agreement then this agreement shall, at the option of ITC, either: ***(I) continue until such time as ITC has purchased a total of 6,000,000 board feet in compliance with the terms and conditions of this agreement, or (ii) terminate, upon written notice from ITC to [Tristate Land and Tri-State], which notice shall be given on or before February 1, 2004. If ITC terminates this agreement in compliance with this subparagraph, [Tristate Land and Tri-State] shall reimburse ITC for any and all unused portions of the money advanced to [Tristate Land and Tri-State] hereunder within thirty (30) days after receipt of said written notice from ITC.***

Record Document 1, Exhibit P-1 at § 3 (emphasis added). Pursuant to Section Three, ITC was entitled to reimbursement for any unused portions of the money advanced only in the event of timely, written notice of termination. In the complaint, ITC did not allege that timely, written notice of termination was given, as contemplated by subparagraph (ii) of Section Three.[5] Rather, ITC alleged that while no logging occurred in 2007, it had logged an additional 230,707 million board feet of pine timber from the property under the Timber Deed as of December 31, 2008. See Record Document 1 at ¶¶ 14-15. Presumably, these factual allegations indicate ITC's election of the option to extend the contract rather than termination of the contract. Based on the Rule 12(b)96) record, ITC has not established that it timely exercised the termination clause of the Timber Deed, thus precluding it from claiming reimbursement. Accordingly, the Motion to Dimiss is granted as to the Tristate defendants.

In its supplemental opposition, ITC alleged a new count of breach of contract and asked for an opportunity to amend its complaint to allege a separate count of breach of

---

[5]ITC seems to rely on extraneous materials outside the complaint and Timber Deed to argue timely, written termination. See Record Document 12 at 6-7. Again, in deciding this Rule 12(b)(6) motion, the Court is limited to relying on the complaint, its proper attachments, and matters of public record. See Financial Acquisition Partners LP, 440 F.3d at 286.

contract. See Record Document 17. ITC did not file a separate motion for leave to amend its complaint.

This "newly learned breach" relates to the option provision set forth in Section One of the Timber Deed:

> In addition, [Tristate Land and Tri-State] grants to ITC ***the exclusive option*** to purchase from [Tristate Land and Tri-State], at ITC's sole discretion, all the pine timber and pine trees measuring ***15" DBH or smaller in diameter***, on terms and conditions set forth herein, now standing or growing on the Property.

Record Document 1, Exhibit P-1 at § 1 (emphasis added). ITC contends that two Timber Cutting Agreements executed in 2003 violated the aforementioned option provision. See Record Document 17. The Timber Cutting Agreements allowed Deltic Timber Corporation the right to cut and remove "all merchantable pine timber 12" diameter . . . and larger" and "selected pine sawtimber." Id., Exhibits P-7 and P-8. According to ITC, the smaller pine timber referenced in the Timber Cutting Agreements was subject to the option set forth in Section One of the Timber Deed. Despite the option, ITC maintains that it was never given the opportunity to harvest the smaller pine timber before execution of the 2003 Timber Cutting Agreements.

Even if the Court allowed ITC to amend its complaint, it appears that a claim related to the "newly learned breach" would not survive a Rule 12(b)(6) attack. The enforcement and interpretation of the Timber Deed is governed by Arkansas law. See Record Document 1, Exhibit P-1 at § 12. Under Arkansas law, "a conveyance of the timber on a certain tract of land is a conveyance of an interest in the land itself" and "the timber is real estate until it is severed from the soil." Anderson-Tully Co. v. Gillett Lumber Co., 222 S.W. 362, 363 (Ark. 1920). As a matter of public policy, the Constitution of Arkansas forbids

"perpetuities." Ark. Const. art. 2, § 19. Arkansas applies the common law definition of perpetuities, which defines "the rule against perpetuities as a rule which prohibits the creation of future interests or estates which by possibility may not become vested within the life or lives in being at the time of the effective date of the instrument and 21 years thereafter." Otter Creek Development Co. v. Friesenhahn, 748 S.W.2d 344, 345 (Ark. 1988) (internal citations omitted).

In 2002, when the Timber Deed at issue in this case was executed, Arkansas law held that options without an express time limit violated the rule against perpetuities and were therefore null and void. See Otter Creek Development, 748 S.W. 2d 318, 345("[A] repurchase option contained in a deed is subject to the rule against perpetuities."); Nash v. Scott, 966 S.W.2d 936, 936 (Ark. App. 1998) ("A repurchase option contained in a deed is subject to the rule against perpetuities."); Middleton v. Western Coal and Mining Co., 241 F. Supp. 407, 418 (W.D. Ark. 1965) ("The rule against perpetuities, as applied to options to purchase real property, is well but briefly stated . . . as follows:  According to the weight of authority in jurisdictions applying the common-law rule against perpetuities, as option to purchase real property, unlimited as to the time for its exercise or extending beyond the period limited by the rule against perpetuities, violates such rule and is invalid.").

In the instant matter, the option contained in Section One of the Timber Deed violates the rule against perpetuities on its face because of its lack of duration. The option, therefore, is void and cannot form the basis for a breach of contract claim.

### III.   Tortious Conversion Claim against Smith.

ITC set forth its claim against Smith in Paragraph 17 of its complaint, which is entitled: "Defendant, A. Lamar Smith's Personal Breach of Contract." Record Document

1 at ¶ 17. ITC specifically alleged that Smith cut, logged, and delivered pine logs belonging to ITC under the Timber Deed and then sold such pine logs to a third party, keeping the cash or payments received for himself. See Record Document 1 at ¶ 17. The title or heading of Paragraph 17 is not determinative, as the "form of the complaint is not significant if it alleges facts upon which relief can be granted." See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 434 (5th Cir. 2000); see also Peavy v. WFAA-TV, Inc., 221 F.3d 158, 167 (5th Cir. 2000). As set forth in the substantive factual allegations contained in Paragraph 17 and as stated by ITC in its opposition, its claim against Smith is for tortious conversion, not breach of contract.

ITC argues that Smith cannot be dismissed from this lawsuit because it has alleged under Arkansas law the common law tort of conversion against Smith in his individual capacity. See Record Document 12 at 8. Specifically, ITC relies on McQuillan v. Mercedes-Benz Credit Corp., 961 S.W.2d 729 (1998), wherein the Arkansas Supreme Court stated:

> Conversion is a common-law tort action for the wrongful possession or disposition of another's property. To establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owners' rights. Where the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use.

Id. at 732 (internal citations omitted).

The enforcement and interpretation of the Timber Deed at issue in this case is governed by Arkansas law. See Record Document 1, Exhibit P-1 at § 12. However, it is unclear on what basis ITC invokes Arkansas law for its tort claim of conversion against Smith. ITC has invoked 28 U.S.C. § 1332 as the jurisdictional basis in this action. See

Record Document 1 at ¶ 4.  "In a diversity action, a federal court must apply the choice of law rules of the state in which the district court where the complaint was filed sits."  <u>Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill</u>, 561 F.3d 377, 386 n. 7 (5th Cir. 2009), citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 61 S.Ct. 1020(1941). This case was filed in the Western District of Louisiana, so Louisiana choice of law rules apply.

Relying on Louisiana Civil Code Articles 3549 and 3492, Smith moves for dismissal of ITC's claim against him on the ground that the conversion claim is prescribed on its face. <u>See</u> Record Document 18 at 9-10.  Smith contends that even if Arkansas law governs the substantive analysis of ITC's conversion claim, "the applicable prescriptive period is nevertheless presumptively provided by Louisiana law." <u>Id.</u> at 10.  Smith invokes Louisiana Civil Code Article 3492, which establishes a one year prescriptive period for delictual actions such as conversion, and argues that "from the face of [ITC's] complaint, it appears that any claim [ITC] attempts to state against Smith personally is prescribed."  <u>Id.</u>

Article 3549 provides in pertinent part:

A. When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies.

B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:

(1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.

(2) If the action is not barred under the law of this state, the action

> shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

La.C.C. Art. 3549. Thus, under Article 3549, it appears that Louisiana's one year liberative prescription period will be applicable to the tortious conversion claim regardless of whether Arkansas or Louisiana substantive law applies. In its complaint, ITC does not allege when Smith allegedly committed the tort of conversion and/or when it learned of the alleged conversion. See Record Document 1. However, the facts set forth in the complaint, which must be accepted as true at this stage of the litigation, indicate that logging occurred on the property in Arkansas and Louisiana as late as 2008. See id. at ¶ 15. ITC filed its complaint on July 29, 2009. See id. Under these facts, it is conceivable that ITC filed suit within one year "from the day injury or damage [was] sustained." La.C.C.Art. 3492. Moreover, while not cited by the parties and without expressing an opinion as to its applicability to the instant matter, the Louisiana Civil Code provides a five year prescriptive period for "an action for damages for the harvesting of timber without the consent of the owner." La.C.C.Art. 3497.

Accordingly, the Court finds that ITC has plead the basis of its conversion claim against Smith with sufficient factual detail and particularity to survive a Rule 12(b)(6) attack. The Motion to Dismiss is denied as to ITC's conversion claim against Smith. While the conversion claim will proceed at this stage, ITC is cautioned that it shall be prepared to identify the basis of invoking Arkansas substantive law; the time frame of Smith's alleged conversion; and the applicable prescriptive period, as these are all issues that will certainly be the subject of future motion practice.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to the breach of contract claims against the Tristate Defendants and denied as to the tortious conversion claim against Smith.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of April, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE